O'Neill v. Annett.

---

MICHAEL O'NEILL vs. ROBERT ANNETT.

1. A wharf is private property, and cannot be used by the public without the owner's consent.

2. Where the owner of a wharf permits it to be used by others, he does not thereby dedicate it to the public, or give the right to use it without his permission.

This cause was tried at the Bergen circuit, at September Term, 1857. On the trial, the court instructed the jury to find a special verdict on two points: 1, whether the wharf was dedicated to the public by the defendant; 2, and if so, what damages the plaintiff had sustained.

O'Neill v. Annett.

The jury, by their verdict, found that the defendant had dedicated the wharf to the public, and assessed the plaintiff's damages at sixty dollars.

On motion of defendant's counsel, the court granted a rule to show cause why the verdict should not be set aside, and certified the case to this court for an advisory opinion.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH and WHELPLEY.

*W. Pennington,* for defendant.

*Zabriskie,* for plaintiff.

The opinion of the court was delivered by

The CHIEF JUSTICE. This action is brought to recover damages alleged to have been sustained by the plaintiff, by reason of the defendant's refusal to permit a vessel to discharge a cargo of coal upon his wharf. The declaration charges that the defendant was possessed of a public wharf, upon which all vessels were entitled to land and discharge cargo on paying reasonable wharfage; that the plaintiff was entitled to have his coal brought and discharged there, and that the defendant unlawfully prevented him, to his damage. On the trial, it appeared that the defendant is in possession of two wharves at Fort Lee, upon the Hudson river. The wharves are a short distance apart, with a basin or dock between them, and extend about thirty feet below low water mark into the river. The defendant is the owner of the shore upon and in front of which the wharves are built. They were built by the defendant, at his own expense. They were originally built more than twenty years since, without legislative sanction. But in 1844, by an act of the legislature, Annett was authorized to keep up and maintain them, as originally erected, below low water mark, and to extend them further into the river. He was also authorized to re-

ceive and collect compensation from any person using said wharves for any purpose whatever. *Pamph. Laws* 210. By an act passed on the 27th of March, 1845, the defendant was further authorized to prevent any steamboat from receiving or discharging freight or passengers upon or from his wharves, under a penalty of $100. *Pamph. Laws* 171. And by an act passed on the 10th of February, 1854, he was authorized to establish a ferry from the said wharves to the city of New York. *Pamph. Laws* 98. A public turnpike passes, or terminates, near the wharf, but it is not shown that the highway extends to the landing, or that there is any connection between them, except that the public pass and repass from one to the other without interruption. The jury, by their verdict, found specially that the defendant had dedicated the wharf to the public, and assessed the plaintiff's damages at sixty dollars.

The better opinion seems to be, that by the common law, except in case of danger or necessity, no one has a right to land goods upon the private property of another on the shore of a navigable river. Thus says Lord Hale : "If A hath the *ripa* or bank of the port, the king may not grant a liberty to unlade upon that bank or *ripa* without his consent, unless custom hath made the liberty thereof free to all (as in many places it is); for that would be a prejudice to the private interest of A, which may not be taken from him without his consent." *De Portibus Maris, p.* 73.

In *Blundell* v. *Catterall*, 5 *Barn. & Ald.* 268, 7 *Eng. Com. L. R.* 91, Mr. Justice Holroyd says: It is not by the common law, nor is it by statute, lawful to come with, or land or ship customable goods in creeks or havens, or other places out of the ports, unless in cases of danger or necessity ; nor fish or land other goods not customable where the shore or land adjoining is private property, unless upon the person's own soil, or with the leave of the owner thereof."

The same principle will be found recognized by the courts of this country. *Chambers* v. *Furrey*, 1 *Yeates' R.* 167; *Ball* v. *Slack*, 2 *Whart. R.* 530; *Cooper* v. *Smith*, 9 *Serg. & Rawle* 26.

It is true that in Pennsylvania the right to the soil of navigable rivers vests in the owner of the adjoining land, but the cases fully sustain the doctrine for which they are cited, viz., that when the shore is private property, there is no public right of landing goods on the shores of navigable rivers without the consent of the owner.

In the *Commonwealth* v. *Wright et al.*, 3 *Am. Jur.* 185, it was said by Thatcher, J., " I am of opinion that if an individual erects a wharf upon the highway, he cannot exclude any of the citizens from going upon it, and using it as if it were in its natural state." And the reason assigned for the opinion is, that " the improvements made upon it by individuals do not change it from public to private property;" and, upon the same principle, it was further held that " where the wharf is erected within the line of low water, no one may, without the consent of the proprietor, enter upon it for any purpose whatever." The right to the exclusive use of the wharf by an individual cannot depend upon the question whether the wharf is constructed above or below low water mark, or whether the shore is or is not *publici juris*, but solely upon the question whether, in fact and in law, the title to the wharf is vested in the individual, no matter how that title may have been acquired.

By the common law of this state, wharves erected by the shore-owner below tide, and within the limits of the *jus publicum*, vest in the shore-owner. It was so held by all the court in *Gough* v. *Bell*, 2 *Zab.* 441. The judges, it is true, differed as to the foundation and nature of the right of the shore-owner, but all agreed that when the land was reclaimed, or the wharf erected by the tacit or express consent of the legislature, it became private property, and divested of its public character. And the

owner has the same absolute dominion over it, the same exclusive right of enjoyment in it, that he has in and over other private property.

The act of 1848, entitled, "An act to protect the private rights of the owners of docks, wharves, storehouses, and piers," (*Nix. Dig.* 873) declares that it shall be lawful for the owners and holders of all wharves to *use, possess,* repair, and keep in order, and to *lay any steamboat, vessel, or other craft at the same.* The right of the owner to *use, possess, and occupy* the wharf involves the right to the sole and exclusive enjoyment of the property to the exclusion of the public.

But the declaration in the cause, as well as the principal argument at the bar, places the plaintiff's right to recover upon the ground that the wharf in question is a public wharf, and the jury, by their verdict, found that it became a public wharf by being dedicated by its owner to the public use. This, of course, implies a previous right of individual ownership in the proprietor. Has there been such dedication, or was there evidence in the cause from which a jury might lawfully infer a dedication? because dedication is a question of intention, a question of fact for the jury; and if there be legal evidence from which such intention may fairly be inferred, the verdict should not be disturbed.

The evidence shows clearly that, for many years past, vessels have been in the habit of loading and unloading at the plaintiff's wharves. Some of the witnesses speak of the practice as having been continued for more than twenty years. The wharves have been used during that period as a place of deposit by persons in the vicinity for lumber, wood, brick, and other materials. Most of the witnesses have had materials landed on the wharf, and have paid wharfage to the defendant. In some cases the materials were landed, with his permission, without charge. In some cases the terms upon which vessels landed were unknown to the witnesses; but wherever

the terms were known the wharf was occupied either by express permission of the plaintiff, or he received wharfage. This *user* constitutes the sole evidence of dedication.

In *Pearsall* v. *Post*, 20 *Wend.* 111, it was held that the public has not the right to use and occupy the soil of an individual adjoining navigable waters as a public landing and place of deposit of property, in its transit, against the will of the owner, although such *user* has been continued more than twenty years. The *user* cannot be urged as evidence of the dedication of the premises to public use. The judgment of the Supreme Court was affirmed after an elaborate argument in the Court of Errors. *Post* v. *Pearsall*, 22 *Wend.* 425. A majority of the judges who delivered opinions holding, with the Supreme Court, that the principle of dedication of highways and public squares did not extend to public landings, and that a mere *user* by the public of the right of landing and deposit upon another's soil could not be evidence of dedication. I think the decision rests upon clear principle; and if it were necessary for the decision of this case, I should have no hesitation in holding that a mere *user* by the public is no evidence in itself, of a dedication of a landing to public use. But the evidence in this case, admitting it to be perfectly competent, does not tend to show a dedication of the wharf to public use, but the very reverse. It establishes the fact that so far as the public used the wharf, it was either upon making compensation to the owner, or by his express permission. The wharf was used by the public precisely in the way the owner designed that it should be used, viz., for his own emolument. The public, who used it, paid him for the use of it. It further appears that, during the very period when it is claimed that the wharf had been dedicated to the public use, the defendant run his own vessel to and from the wharf; that the vessels of others occupied the dock between the wharves during the winter, and paid him for

the privilege; that he received $50 per annum for the rent of a room upon the wharf for a number of years; that he procured a series of legislative enactments to secure and increase the value of his interest in the property, and that finally he obtained authority to establish a ferry between the wharves and New York, and to receive, for his own use, rates of ferriage established by law. It is difficult to conceive of evidence that could more clearly negative the idea of dedication to public use, or more satisfactorily establish the fact that the proprietor was using the property for his own private emolument.

On the argument it was insisted that the *user* established the right of the public to pass and repass from the highway to the landing, and that no one could be prosecuted as a trespasser for so doing; that the claim was in fact not for a right of landing, but a mere right of way or transit. But the plaintiff's claim is for damages in not being permitted to land his coal upon the wharf. The burthen of proof is, that the defendant refused to allow the vessel to discharge the coal on the wharf. The captain offered to pay reasonable wharfage, but the defendant forbade his unloading, and he stopped. This, it is obvious, is the gravamen of the action; it constitutes, in fact, the sole ground of complaint. There was no evidence whatever of a dedication of the wharf to the public for any such purpose.

The Circuit Court should be advised that the motion for a nonsuit should have prevailed, and that the verdict should be set aside, as against evidence.